1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11   SAMMIE JENKINS,              ) Case No. EDCV 14-1796-JPR
                                   )
12                  Plaintiff,     )
                                   )
13             vs.                 ) **MEMORANDUM OPINION AND ORDER**
                                   ) **AFFIRMING COMMISSIONER**
14   CAROLYN W. COLVIN, Acting     )
     Commissioner of Social        )
15   Security,                     )
                                   )
16                  Defendant.     )
                                   )
17   ────────────────────────────

18   **I.   PROCEEDINGS**

19        Plaintiff seeks review of the Commissioner's final decision

20   denying her application for Social Security disability insurance

21   benefits ("DIB") and supplemental security income benefits

22   ("SSI").  The parties consented to the jurisdiction of the

23   undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c).  This

24   matter is before the Court on the parties' Joint Stipulation,

25   filed May 11, 2015, which the Court has taken under submission

26   without oral argument.  For the reasons stated below, the

27   Commissioner's decision is affirmed.

28

                                   1

**II.   BACKGROUND**

Plaintiff was born in 1972 and was 38 years old when she allegedly became disabled. (Administrative Record ("AR") 19, 28, 144.) She attended ninth grade but did not complete it, and she testified that she is unable to read or write.[1] (AR 45.) Plaintiff previously worked as a hairstylist/braider, babysitter, and house cleaner. (AR 52, 53, 184.)

On June 14, 2011, Plaintiff submitted applications for DIB and SSI, alleging that she had been unable to work since October 5, 2010, because of "learning disabilities." (AR 144, 151, 162.) She did not allege any physical impairments. (Id.) After her applications were denied, she requested a hearing before an Administrative Law Judge. (AR 86.) The ALJ continued the initial hearing to permit Plaintiff to retain counsel. (AR 25-32.) A second hearing was held on February 25, 2013. (AR 33.) Plaintiff, who was represented by counsel, testified, as did a vocational expert ("VE"). (AR 33-57.) In a written decision issued on April 2, 2013, the ALJ determined that Plaintiff was not disabled. (AR 7-21.) On August 7, 2014, the Appeals Council denied Plaintiff's request for review. (AR 1-3.) This action followed.

---

[1] Plaintiff's testimony conflicts with her earlier indication in a disability report that she could "read and understand English" and "write more than [her] name in English." (AR 161 (stating that "the person who is applying for disability" completed the report).) She also appears to have written some documents in the record herself. (See, e.g., AR 47-48, 111, 184, 187.)

2

**III. STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. See id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

**IV.   THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or has lasted, or is expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir.

3

1   1992).

2       A.   <u>The Five-Step Evaluation Process</u>

3       The ALJ follows a five-step sequential evaluation process to

4   assess whether a claimant is disabled.  20 C.F.R.

5   §§ 404.1520(a)(4), 416.920(a)(4); <u>Lester v. Chater</u>, 81 F.3d 821,

6   828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996).  In the first

7   step, the Commissioner must determine whether the claimant is

8   currently engaged in substantial gainful activity; if so, the

9   claimant is not disabled and the claim must be denied.

10  §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

11      If the claimant is not engaged in substantial gainful

12  activity, the second step requires the Commissioner to determine

13  whether the claimant has a "severe" impairment or combination of

14  impairments significantly limiting her ability to do basic work

15  activities; if not, the claimant is not disabled and her claim

16  must be denied.  §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

17      If the claimant has a "severe" impairment or combination of

18  impairments, the third step requires the Commissioner to

19  determine whether the impairment or combination of impairments

20  meets or equals an impairment in the Listing of Impairments

21  ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix

22  1; if so, disability is conclusively presumed.

23  §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

24      If the claimant's impairment or combination of impairments

25  does not meet or equal an impairment in the Listing, the fourth

26  step requires the Commissioner to determine whether the claimant

27

28

4

1  has sufficient residual functional capacity ("RFC")[2] to perform

2  her past work; if so, the claimant is not disabled and the claim

3  must be denied.   §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).   The

4  claimant has the burden of proving she is unable to perform past

5  relevant work.   Drouin, 966 F.2d at 1257.   If the claimant meets

6  that burden, a prima facie case of disability is established.

7  Id.

8       If that happens or if the claimant has no past relevant

9  work, the Commissioner then bears the burden of establishing that

10 the claimant is not disabled because she can perform other

11 substantial gainful work available in the national economy.

12 §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); Drouin, 966 F.2d at 1257.

13 That determination comprises the fifth and final step in the

14 sequential analysis.   §§ 404.1520(a)(4)(v), 416.920(a)(4)(v);

15 Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

16      B.   The ALJ's Application of the Five-Step Process

17      At step one, the ALJ found that Plaintiff had not engaged in

18 substantial gainful activity since October 5, 2010, the alleged

19 onset date.   (AR 12.)   At step two, he concluded that Plaintiff

20 had the severe impairment of "borderline intellectual

21 functioning."   (Id.)   He found that Plaintiff's "arthritis, and

22 chronic hand, leg, and back sprain/strain" and "depressive

23 disorder" were not severe.   (AR 12-13.)   At step three, the ALJ

24 determined that Plaintiff's impairments did not meet or equal any

25 of the impairments in the Listing.   (AR 14-16.)   At step four, he

26

27      [2] RFC is what a claimant can do despite existing exertional
   and nonexertional limitations.   §§ 404.1545, 416.945; see Cooper
28 v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

found that Plaintiff had the RFC

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to simple routine tasks, with no contact with the public; she cannot engage in any kind of cooperative, tandem task work; and she can have only occasional contact with coworkers and supervisors.

(AR 16.)  Based on the VE's testimony, the ALJ concluded that Plaintiff could not perform her past relevant work as a hair stylist/braider, babysitter, or house cleaner.  (AR 19.)  At step five, the ALJ found that Plaintiff could perform jobs that existed in significant numbers in the national economy.  (AR 19-20.)  Accordingly, the ALJ found her not disabled.  (AR 20.)

**V.   DISCUSSION**

Plaintiff contends the ALJ erred in (1) failing to fully and fairly develop the record and (2) finding that her physical impairments were not severe.[3]  (J. Stip. at 3.)  Remand is not warranted on either basis.[4]

A.   <u>The ALJ Had No Duty to Develop the Record Further</u>

1.   <u>Applicable law</u>

In determining disability, the ALJ has a "duty to fully and fairly develop the record and to assure that the claimant's interests are considered."  <u>Garcia v. Comm'r of Soc. Sec.</u>, 768 F.3d 925, 930 (9th Cir. 2014) (internal quotation marks omitted);

---

[3] Plaintiff does not challenge the ALJ's determination that her depressive disorder was not severe.  (AR 13.)

[4] Plaintiff treats these as one issue (J. Stip. at 3), but the Court has separated them into two issues for clarity.

1    see also Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012
2    (9th Cir. 2003) ("In making a determination of disability, the
3    ALJ must develop the record and interpret the medical
4    evidence."). This is true even if the claimant is represented by
5    counsel. See Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir.
6    2003).

7        Nonetheless, it remains Plaintiff's burden to produce
8    evidence in support of her disability claims. See Mayes v.
9    Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (as amended).
10   Moreover, the "ALJ's duty to develop the record further is
11   triggered only when there is ambiguous evidence or when the
12   record is inadequate to allow for proper evaluation of the
13   evidence." McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2010)
14   (as amended May 19, 2011) (internal quotation marks omitted);
15   accord Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).

16       2.   Relevant facts

17       Plaintiff testified that she stopped her work as a hair
18   stylist because she "started having pain in [her] hands and [her]
19   knees," and sitting and standing for long periods of time was
20   painful.[5] (AR 39, 42.) Plaintiff testified that her arthritis
21   caused pain in the "little finger" of her left hand and "two

[5] In a disability report, Plaintiff stated that she stopped
working on October 5, 2010, because she "[w]asn't making any
money," although she also stated that that same day, her
conditions became severe enough to prevent her from working. (AR
162.) At the hearing she testified that she stopped babysitting
because the children started school (AR 40), but she also said
her depression caused her not to want to be around them anymore
(id.). Further, she told examining psychologists that she could
not work because of her alleged illiteracy. (AR 195, 204.)

7

1  fingers on [her] right hand." (AR 48-49.)  She explained that as
2  a result, she sometimes needed assistance to reach a box of
3  cereal or grab a carton of milk, and it hurt to lift 10 pounds of
4  potatoes. (AR 41, 50.)  Plaintiff further testified that she
5  would not be able to do a simple job "where [she would] be
6  sitting at a work table" because of pain in her lower back,
7  ankles, and knees. (AR 50-51.)  She testified that she saw Dr.
8  Bikramjit Ahluwalia for her arthritis and that he regularly
9  prescribed medication that helped only "[a] little bit." (AR
10 43.)

11      Plaintiff provided only two pages of medical records and a
12 three-sentence-long letter from Dr. Ahluwalia, her treating
13 physician, to support her claims of physical impairment. (See AR
14 197, 199-200.)  The medical records consisted of one treatment
15 note from an appointment with Dr. Ahluwalia on September 26,
16 2012, a "follow up" to an unspecified appointment. (AR 199-200.)
17 Dr. Ahluwalia noted that Plaintiff denied having painful,
18 swollen, or stiff joints and also denied loss of strength. (AR
19 13, 199-200.)  Furthermore, the note listed "arthritis" under
20 Plaintiff's medical history but indicated that Plaintiff was not
21 taking any medication.  (Id.)  The only objective findings Dr.
22 Ahluwalia noted were Plaintiff's vitals, height, weight, and
23 body-mass index. (AR 200.)  The letter Dr. Ahluwalia wrote on
24 October 16, 2012, less than one month later, indicated that
25 Plaintiff had been "diagnosed with osteoarthritis" and "[took]
26 several medications for this including pain medication." (AR 13,
27 197.)  In her list of medications, however, Plaintiff listed only
28

1   one medication prescribed by Dr. Ahluwalia, Meloxicam,[6] which she

2   stated was first prescribed on July 3, 2012.  (AR 187.)

3   Additionally, Dr. Ahluwalia's letter and treatment note did not

4   indicate that Plaintiff had any limitations or restrictions on

5   her ability to work.  (AR 197, 199-200.)

6        Plaintiff never alleged that she was unable to work because

7   of her arthritis and alleged hand, leg, and back pain until the

8   hearing on February 25, 2013.  (AR 33-57; <u>see also</u> AR 179

9   (stating in updated disability report that she had no new

10  physical limitations to report).)  Indeed, her attorney argued

11  primarily that she was disabled because of her mental conditions

12  (AR 37-38) but added that "she also has some generalized back

13  pain, which contributes to her inability to get going" (AR 38).

14  Further, in an August 5, 2011 psychological evaluation, Plaintiff

15  did not list arthritis under her chief complaints or past medical

16  history and stated that she was not taking any prescription or

17  pain medication.  (AR 190-91.)  Similarly, an adult clinical

18  assessment on May 14, 2012, indicated that Plaintiff had no

19  current health problems and was not taking any medication.  (AR

20  204-05.)

21            3.  <u>Analysis</u>

22       Plaintiff contends the ALJ did not fully and fairly develop

23  the record because he did not send her for a consultative

24  examination concerning her alleged physical impairments and thus

25

26       [6] Meloxicam is a nonsteroidal antiinflammatory drug used to
    relieve pain, stiffness, tenderness, and swelling caused by
27  osteoarthritis and rheumatoid arthritis.  <u>See</u> <u>Meloxicam</u>,
    MedlinePlus, http://www.nlm.nih.gov/medlineplus/druginfo/meds/
28  a601242.html (last updated Sept. 1, 2009).

"did not fully determine whether [she had] a severe impairment or whether there were any limitations and restrictions on [P]laintiff based on her arthritis." (J. Stip. at 4.)  However, it was Plaintiff's "duty to prove that she was disabled." <u>Mayes</u>, 276 F.3d at 459; <u>see also</u> §§ 404.1512(a) (claimant must prove disability), 416.912(a) (same); 404.1512(c) (claimant must provide medical evidence showing disability), 416.912(c) (same). Although Plaintiff concedes that "there [was] little medical evidence of record of treatment," she nonetheless argues that "[h]ad the ALJ sent [her] for a complete orthopedic or internal medicine consultative examination . . . he may have come to a different conclusion regarding [her] physical impairments and restrictions." (J. Stip. at 3-4.)  But Plaintiff never alleged during the proceedings leading up to the hearing that she had any physical impairments, and thus the agency would have had no reason to engage a consultative doctor on that issue.  Moreover, Plaintiff's position concerning what any such doctor would have found is speculative.  (<u>See</u> J. Stip. at 4); <u>Kelly v. Colvin</u>, No. 03:14-cv-01020-HZ, 2015 WL 3606047, at *8 (D. Or. June 4, 2015) (finding no duty to develop record and send claimant to consultative exam based on claimant's speculation regarding results); <u>see also</u> <u>Black v. Astrue</u>, No. CV-10-0164-CI, 2011 WL 6370321, at * 6 (E.D. Wash. Dec. 14, 2011) ("Plaintiff's speculation that a mental impairment may exist is not sufficient to justify the purchase of a consultative examination." (internal quotation marks omitted)).  Plaintiff may not "improperly shift her own burden" of proving disability "to the ALJ." <u>Mayes</u>, 276 F.3d at 459.

An ALJ has broad discretion in determining whether to purchase a consultative examination and may do so "to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [the ALJ] to make a determination" on a claimant's claim.   §§ 404.1519a(b), 416.919a(b); see Reed v. Massanari, 270 F.3d 838, 842 (9th Cir. 2001); see also Leitner v. Comm'r Soc. Sec. Admin., 361 F. App'x 876, 877 (9th Cir. 2010) (finding no duty to send claimant to consultative exam before finding impairment not severe because record was neither ambiguous nor inadequate); Zyla v. Colvin, No. CV-11-00467-CI, 2013 WL 2295670, at *4 (E.D. Wash. May 24, 2013) (finding no duty to order consultative exam because claimant "failed to carry his burden to initially raise the issue of a severe mental impairment").

In this case, the ALJ did not find the evidence insufficient to support a decision; rather, his review of Plaintiff's single treatment record, her treating physician's letter, and her statements led the ALJ to determine that Plaintiff's physical impairments were not severe.   (AR 13.)   The ALJ reasonably determined that Dr. Ahluwalia's treatment note from her appointment in September 2012 indicated that Plaintiff "basically had a normal examination, with no diagnosis or treatment given." (AR 13, 199-200.)   The ALJ found that the "very weak medical evidence" did not support Plaintiff's contentions of her fairly "limited daily activities."   (AR 17.)   Moreover, he found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely credible," a finding Plaintiff has not challenged.   (Id.)   Although

11

Plaintiff contends the ALJ had a duty to develop the record
further instead of basing his conclusion on the limited medical
evidence (J. Stip. at 4), "the record must be ambiguous or
inadequate to trigger this duty," Kelly, 2015 WL 3606047, at *8.
"[T]he ALJ's finding that the record does not contain evidence to
support Plaintiff's contentions is not equivalent to a finding
that the record needs further development"; "[r]ather, the lack
of evidence is proof that Plaintiff's contentions lack merit."
Figueroa v. Colvin, No. CV 12-06742-OP, 2013 WL 1859073, at *2
(C.D. Cal. May 2, 2013) (ALJ's duty to develop record was not
triggered when Plaintiff produced few medical records); see also
Leitner, 361 F. App'x at 877 (ALJ did not err in failing to order
consultative exam concerning Plaintiff's depression when she had
not been recommended nor sought counseling and had voluntarily
discontinued medication).  Moreover, Plaintiff does not point to
any medical records the ALJ should have obtained but did not.
Indeed, at the hearing, the ALJ specifically asked if there were
"any other documents" he should "read and consider," and
Plaintiff's counsel said no.  (AR 36.)  Plaintiff could have
submitted additional records to the Appeals Council but did not.
(AR 36); §§ 404.970(b), 416.1470(b).  Thus, the ALJ did not fail
to develop the record when he did not send her "for a complete
orthopedic or internal medicine examination."  (J. Stip. at 4.)

Remand is not warranted on this basis.

1       B.   <u>The ALJ Did Not Err in Determining that Plaintiff's</u>

2             <u>Arthritis and Chronic Hand, Leg, and Back Sprain/Strain</u>

3             <u>Were Not Severe Impairments</u>

4         1.   <u>Applicable law</u>

5       At step two of the sequential evaluation process, the

6   claimant has the burden to show that she has one or more "severe"

7   medically determinable impairments that can be expected to result

8   in death or last for a continuous period of at least 12 months.

9   See <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 n.5 (1987) (claimant

10  bears burden at step two); <u>Celaya</u>, 332 F.3d at 1180 (same);

11  §§ 404.1508, 416.908 (defining "physical or mental impairment");

12  §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (claimants not disabled

13  at step two if they "do not have a severe medically determinable

14  physical or mental impairment that meets the duration

15  requirement").

16      To establish a medically determinable impairment as

17  "severe," the claimant must show that it "significantly limits

18  [her] physical or mental ability to do basic work activities."[7]

19  §§ 404.1520(c), 416.920(c); <u>accord</u> §§ 404.1521(a), 416.921(a).

20  "An impairment or combination of impairments may be found not

21  severe <u>only if</u> the evidence establishes a slight abnormality that

22  has no more than a minimal effect on an individual's ability to

23  work."  <u>Webb v. Barnhart</u>, 433 F.3d 683, 686 (9th Cir. 2005)

24  (emphasis in original, internal quotation marks omitted); <u>see</u>

25

26       [7] "Basic work activities" include, among other things, "[p]hysical functions such as walking, standing, sitting,

27  lifting, pushing, pulling, reaching, carrying, or handling" and "[c]apacities for seeing, hearing, and speaking."

28  §§ 404.1521(b), 416.921(b); <u>accord</u> <u>Yuckert</u>, 482 U.S. at 141.

1    also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) ("[T]he
2    step-two inquiry is a de minimis screening device to dispose of
3    groundless claims.").   Thus, a court must determine whether an
4    ALJ had substantial evidence to find that the record clearly
5    established that a particular impairment was not severe.   See
6    Webb, 433 F.3d at 687.

7                2.   Analysis

8         Plaintiff contends that the ALJ erred in determining that
9    her arthritis and allegedly chronic hand, leg, and back
10   sprain/strain were not severe impairments.   (J. Stip. at 5.)
11   Reversal is not warranted on this basis because substantial
12   evidence in the record supports the ALJ's finding that
13   Plaintiff's physical impairments were not severe.   (AR 13.)

14        Plaintiff argues that "there [was] substantial evidence to
15   support that Plaintiff's physical impairments more than minimally
16   affect[ed] her ability to perform basic work activities," but she
17   does not specifically point to any evidence in the record
18   supporting this contention.   (J. Stip. at 5.)   Dr. Ahluwalia's
19   September 26, 2012 treatment note and letter do not reflect any
20   functional limitations resulting from Plaintiff's physical
21   impairments.   (AR 197, 199-200.)   On the contrary, the treatment
22   note from her "follow up" appointment just a few weeks later
23   indicates that Plaintiff "denied having painful, stiff, or
24   swollen joints" and denied loss of strength.   (AR 13, 199.)   This
25   appointment took place less than three months after Dr. Ahluwalia
26   apparently first prescribed Plaintiff pain medication, in July
27   2012 (AR 187), yet the treatment note indicates that she "was not
28

                                    14

taking any medications" (AR 13, 199-200).[8]  The ALJ found that Plaintiff "basically had a normal examination, with no diagnosis or treatment given," which supports his conclusion that Plaintiff's physical impairments were not severe.  (AR 13.)

     The ALJ did not err in noting that there existed in the record virtually nothing regarding any treatment for physical impairments.  (Id.)  Although Plaintiff testified that her daily activities were fairly limited by her physical impairments (AR 17, 39, 41-42, 48-51), the ALJ did not find her statements to be fully credible (AR 17), and Plaintiff does not challenge that finding.  Indeed, in her applications Plaintiff stated that she did not need help with personal care, hygiene, or "upkeep of a home."  (AR 145; see also AR 172.)  The ALJ did not err in concluding that the record established that Plaintiff's alleged physical impairments were not severe.  When, as here, substantial evidence supported the ALJ's finding that a claimant was not disabled, this Court may not substitute its judgment for that of the Commissioner.  See Reddick, 157 F.3d at 720-21.

     Remand is not warranted on this basis.

_____

     [8] A 2012 "VCSS Adult Clinical Assessment" stated that she had no "past" medications, including "over-the-counter, non-traditional, herbs, etc."  (AR 204.)

**VI. CONCLUSION**

Consistent with the foregoing, and under sentence four of 42 U.S.C. § 405(g),[9] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner, DENYING Plaintiff's request for remand, and DISMISSING this action with prejudice. IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.

DATED: July 10, 2015

JEAN ROSENBLUTH
U.S. Magistrate Judge

---

[9] This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."